THE PEOPLE OF THE STATE OF NEW YORK ex rel. DAVID HARRIS, Relator, against THOMAS H. HANLON, as Superintendent of State Institution for Male Defective Delinquents at Napanoch, Defendant.

Supreme Court, Special Term, Ulster County, November 18, 1946.

*Samuel Chikovsky* for relator.

*Nathaniel L. Goldstein, Attorney-General (George A. Radz* of counsel), for defendant.

ELSWORTH, J.  The relator is now an inmate in the State Institution for Male Defective Delinquents at Napanoch, New York, under a commitment made by a judge of the City Court, Criminal Branch, of Rochester, New York, on May 28, 1940. By this habeas corpus proceeding, he challenges the legality of his confinement under said commitment.

These are the facts.  On May 22, 1940, the relator, following his arrest two days earlier in the city of Rochester on the charge of vagrancy (violation of Code Crim. Pro., § 887, subd. 1), was convicted of that offense in the City Court, Criminal Branch,

of said city upon his plea of guilty. Sentence was deferred until May 28th. In the interim, a mental examination was ordered and examiners appointed. They reported and certified on May 25th that the relator was mentally defective and a proper subject for custody and treatment in some institution for mental defectives. Thereafter, the above-referred-to commitment order of May 28th was made. By its provisions, the said David Harris was adjudged mentally defective and committed to the said institution at Napanoch " there to be dealt with according to law." He has since been there confined, except for a period of parole between January 26, 1945, and November 26, 1945.

The relator's claim of illegal confinement under the commitment is predicated entirely upon the proposition that the City Court, Criminal Branch, of the City of Rochester lacked jurisdiction to make the same. In support thereof, he contends: (1) That said court had authority to act only within the limits of jurisdiction conferred upon it by the charter of the City of Rochester and the provisions of the Code of Criminal Procedure applicable to Courts of Special Sessions, and (2) that section 124 of the Mental Hygiene Law did not increase such authority because it applies only to courts of record.

The relator's second contention can be summarily dismissed from consideration. No claim is made here that the committing court presumed to act under any such provision of the Mental Hygiene Law. The statute itself prohibits it. Section 136 thereof expressly provides that the article of which section 124 is a part " shall not apply to the institutions for defective delinquents at Napanoch, * * * nor to commitments * * * thereto * * *."

In making his first above-stated contention, the relator has ignored entirely section 438 of the Correction Law, in force and effect at the date of his commitment, and which provides as follows: " A male mental defective over sixteen years of age convicted of a criminal offense may be committed to the state institution for defective delinquents at Napanoch, upon a certificate of mental defect by two qualified examiners, or a qualified examiner and a qualified psychologist, made after an examination by them of the alleged mental defective. Commitment to said institution at Napanoch by a court of competent jurisdiction shall be deemed a final disposition of the indictment or criminal offense charged and shall wholly divest the said court of its jurisdiction over the prisoner under said commitment and by reason of said offense, except as hereinafter

otherwise provided by section four hundred forty-two. Within the meaning of this article, a qualified examiner or qualified psychologist is one having the qualifications prescribed by and who has complied with, the provisions of section nineteen of the mental hygiene law." It is this section which controls commitments to the institution at Napanoch.

There is no dispute here that the relator at the time of his commitment was, within the meaning of the statute, a male mental defective, that he was over sixteen years of age, that he stood convicted of a criminal offense (see *People ex rel. Stolofsky* v. *Superintendent*, 259 N. Y. 115, so holding as to vagrancy), and that he had been duly examined and certificate thereof made. Thus, finding all those requirements met, the question that remains for determination is whether or not the Criminal Branch of the Rochester City Court, a Court of Special Sessions, had authority under said section 438 to make the challenged commitment.

No cases, in point, have been cited or found. The answer to the problem presented, therefore, must come from the statute itself. There are these significant things to be noted in the statute. Expressly, it neither grants nor denies authority to any court to act thereunder. If the Legislature intended to limit jurisdiction to courts of record, it would have been a simple matter for the statute to so provide. It expressly authorizes in its first sentence commitment upon conviction " of a criminal offense ". Courts of Special Sessions have jurisdiction thereof. Its second sentence provides that " Commitment to said institution at Napanoch by a *court of competent jurisdiction* shall be deemed a final disposition of the *indictment* or *criminal offense* charged * * *." (Emphasis supplied.) This language emphasizes and makes clear the statute's application to felonies or indictable misdemeanors on the one hand and to criminal offenses on the other. All that can be spelled out of the words " court of competent jurisdiction " as above used is a court with authority to act. Here, the committing court had jurisdiction both of the relator and of the offense charged. I believe it was vested with authority to act. It is my determination that the commitment in question of the City Court, Criminal Branch, of the City of Rochester, a Court of Special Sessions, was properly made under authority conferred upon it by section 438 of the Correction Law.

The conclusion reached might seem, perhaps, to place greater power in a Court of Special Sessions than we ordinarily associate therewith. While that would be a matter solely within the

province of the Legislature, still, I believe analyzation of the situation dispels such a conclusion. The real basis of commitment, regardless of the court, is the certificate of mental examination. No reason appears why examiners cannot and would not act as competently and as conscientiously in a Court of Special Sessions as in a court of record. The statutory requirements as to the examination must be fully met in either court if a proper commitment is made.

Again, unusual power might seem to be placed in a Special Sessions Court because a commitment to the institution at Napanoch on a minor offense such as vagrancy, could result in a defendant's confinement there for life. That situation, however, must be considered in the light of the statutory provisions of the Correction Law providing for discharge of inmates. Thereunder, no such result could obtain in the case of an inmate who has experienced favorable adjustment warranting his discharge, assuming, of course, a proper administering and application of the statute's said provisions. The relator's own case may be taken as an example. At all times under his commitment, he was and will be eligible for and entitled to discharge if his adjustment so justifies.

The provisions of the Correction Law, governing the commitment, confinement, parole and discharge of mental defectives to the institution at Napanoch, are not penal. They are for the " care, training and custody of mental defectives " (Correction Law, § 430) — not for the " security and reformation of prisoners " (see Correction Law, § 70, applicable to State prisons) — not for the " security and correction of persons " (see Correction Law, § 270, applicable to reformatories). They are aimed toward bringing about the rehabilitation of the person to whom they may be applied, as well as the protection of the society to which he belongs. If administered in the spirit of that dual purpose, there is naught to be feared by having the power of commitment thereunder vested in Courts of Special Sessions as well as in courts of record. I believe that to have been the view of the Legislature in enacting the statute.

The writ is dismissed and the relator remanded to the custody of the superintendent of the Institution for Male Defective Delinquents at Napanoch, New York. Submit order accordingly.